UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ASHLEY JORDAN PARKER,

                  Plaintiff,                         Case No. 2:25-cv-231

v.                                            Honorable Maarten Vermaat

ALGER CORRECTIONAL FACILITY,

                  Defendant.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court has granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before this Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that Defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way Defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does

not contain a consent from the defendants[; h]owever, because they had not been served, they were

not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal

law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted,

or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2),

1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they

are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a

claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues LMF "employed as staff." (Compl.,

ECF No. 1, PageID.1, 2.)

In Plaintiff's complaint, he states that he arrived at LMF on August 20, 2024. (*Id.*,

PageID.3.) Two days later, on August 22, 2024, "a mass shakedown" was conducted throughout

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017)
(concluding that, when determining which parties are required to consent to proceed before a
United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the
United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a
screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c));
*Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for
the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207
n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning
in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

LMF. (*Id.*) Nothing was found in Plaintiff's cell, and two hours later, he returned to his cell. (*Id.*) At some point, Plaintiff "passed out and when [he] came to, [he] was being held down by multiple correction officers." (*Id.*) Plaintiff advised these officers that he had "a history of passing out." (*Id.*) The unnamed officers asked Plaintiff if he "had consumed any drugs or alcohol," and Plaintiff said that he had not. (*Id.*) The unnamed officers "strapped [Plaintiff] into a restraint chair even though [Plaintiff] was calm," and took Plaintiff to the medical department. (*Id.*) Approximately, twenty minutes after Plaintiff arrived at the medical department, he was transported to an outside hospital. (*Id.*)

Upon arrival at the outside hospital, Officer Brock "told the staff [Plaintiff] was drunk," and Plaintiff "told them [he] had a history of passing out since COVID[-19]." (*Id.*) The drug and alcohol tests administered by the hospital staff were negative. (*Id.*) Plaintiff alleges that an unnamed doctor at the hospital told Officer Brock that all of the administered tests were negative. (*Id.*)

When Plaintiff returned to LMF, Captain Watson told Officer Brock to "treat this like we did yesterday." (*Id.*) Thereafter, Plaintiff was taken to the medical department and then "to the hole." (*Id.*) Plaintiff was issued a class II misconduct ticket for substance abuse, which was elevated to a class I misconduct ticket. (*Id.*) In the misconduct ticket, Officer Brock stated that Plaintiff had tested positive for alcohol. (*Id.*)

Ultimately, Plaintiff's bond was revoked, "reason being [he] was unmanageable in general population." (*Id.*) Plaintiff was "in the hole for eight days," and "they . . . wouldn't give [him] writing utensils to communicate and let [his] family know why [he] wasn't calling." (*Id.*, PageID.4.)

Plaintiff alleges that he advised Sergeants Mosier and Hubble about the matter, and they "refused to pull the misconduct." (*Id.*, PageID.3.) Plaintiff also claims that Resident Unit Manager Naeyaert violated Plaintiff's "due process by lying and telling the ALJ/Hearing Officer [that Plaintiff] refused to participate in the hearing." (*Id.*) At the misconduct hearing, Plaintiff was found not guilty of the misconduct charge because the "lab report show[ed] the prisoner negative for alcohol." (*Id.*, PageID.4.) After Plaintiff was found not guilty, he claims that "they tried to cover up that Officer Brock lied and falsified a state document." (*Id.*)

On an unspecified later date, Plaintiff tried to make copies of his step III grievance appeal, and an unnamed librarian told Plaintiff that she had lost them. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendant LMF violated his Fourteenth Amendment due process rights. (*See id.*, PageID.3, 4.) Plaintiff also states that he has "fear[s] of retaliation," which the Court construes as raising a First Amendment retaliation claim. (*Id.*, PageID.5.) As relief, Plaintiff seeks monetary damages and injunctive relief. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant LMF

In this action, Plaintiff names LMF as the sole Defendant. (Compl., ECF No. 1, PageID.1, 2.) However, as explained below, Plaintiff may not maintain a § 1983 action against LMF.

As an initial matter, LMF is not a separate entity capable of being sued. *See, e.g.*, *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013) (discussing that "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners," and "[t]hey are not the proper public entity for suit"); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions

6

operated by the MDOC and are not . . . legal entities subject to suit . . . .”). Additionally, LMF and

the State of Michigan (acting through the MDOC) are not “persons” who may be sued under

§ 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will

v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison v. Michigan*, 722 F.3d 768, 771

(6th Cir. 2013); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006). And,

regardless, Plaintiff's claims against Defendant LMF also fall far short of the minimal pleading

standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2).

Accordingly, for these reasons, Plaintiff's claims against Defendant LMF will be dismissed

for failure to state a claim. Moreover, as explained below, even setting aside the issue with naming

LMF as the sole Defendant, Plaintiff's complaint is still subject to dismissal because Plaintiff fails

to state any claim upon which relief may be granted.

**B.      References to “Staff,” “They” and “Officers”**

In this action, Plaintiff sues LMF “employed as staff” and throughout Plaintiff's complaint,

he references “they” and “officers” when describing who took the actions against him. (*See*

Compl., ECF No. 1, PageID.2, 3–4.)

However, Plaintiff's “[s]ummary reference to a single, five-headed ‘Defendants’ [or ‘they’

or ‘staff’ or ‘officers’] does not support a reasonable inference that each Defendant is liable . . . .”

*Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). The United States Court

of Appeals for the Sixth Circuit “has consistently held that damage claims against government

officials arising from alleged violations of constitutional rights must allege, with particularity, facts

that demonstrate what each defendant did to violate the asserted constitutional right.” *Heyne v.

Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529

F.3d 673, 684 (6th Cir. 2008)). Here, Plaintiff's general references to “staff,” “they,” and “officers”

are insufficient to show that any individuals, let alone the named Defendant, were personally involved in the actions that Plaintiff attributes to these groups of people.

Accordingly, any intended claims against "staff," "they," and "officers" will be dismissed for failure to state a claim upon which relief may be granted.

### C.       Merits of Plaintiff's Claims

#### 1.       Fourteenth Amendment Due Process Claims

Plaintiff claims that the issuance of the class II misconduct ticket for substance abuse, which was elevated to a class I misconduct ticket, his placement in segregation, also known as "the hole," pending the misconduct hearing, and the decision by supervisory individuals to continue to pursue the misconduct ticket violated Plaintiff's due process rights. (*See* Compl., ECF No. 1.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*,

8

155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In

*Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the

inmate did not have a liberty interest because his placement in administrative segregation for thirty

days did not constitute an atypical and significant hardship within the context of his prison life.

*Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a

protected liberty interest, a plaintiff cannot successfully claim that his due process rights were

violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff received a substance abuse misconduct ticket, and he was held in

segregation for eight days pending the misconduct hearing. (Compl., ECF No. 1, PageID.3–4.)

Ultimately, Plaintiff was found not guilty of the charge. (*Id.*, PageID.4.)

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that

the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the

duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation

to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. However, the sanctions

available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and

placement in segregation or non-bond status and the loss of certain privileges for a limited period

of time do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See,*

*e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits

under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence);

*Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an

atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding

that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805

(concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the

9

level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Furthermore, because Plaintiff was found not guilty of the misconduct charge, he did not receive any sanctions for a misconduct conviction. (*See* Compl., ECF No. 1, PageID.4.) Under these circumstances, Plaintiff necessarily fails to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Accordingly, for the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims will be dismissed for failure to state a claim.

### 2.    First Amendment Retaliation Claims

In Plaintiff's complaint, he states that he has "fear[s] of retaliation," and the Court construes this statement as raising a First Amendment retaliation claim. (Compl., ECF No. 1, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff's retaliation claims fail at the first step because Plaintiff fails to allege that he engaged in any protected conduct before the individuals in the complaint took the allegedly adverse actions against him. And, regardless, Plaintiff's retaliation claims are entirely conclusory and fail to state a claim. Plaintiff merely alleges the ultimate fact of retaliation; however, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of

11

malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, any intended First Amendment retaliation claims will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated:    October 24, 2025                              /s/ *Maarten Vermaat*
                                                         Maarten Vermaat
                                                         United States Magistrate Judge